IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURIE GEORGE, | ) | CASE NO.  1:08 CV 2395 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Laurie George's application for Disability Insurance benefits under Title II of the of the Social Security Act, 42 U.S.C. §416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  PROCEDURAL HISTORY

On September 12, 2000, Plaintiff filed an application for Disability Insurance benefits, alleging disability due to multiple sclerosis ("MS") (Tr. 48-52).  Her application was denied initially and upon reconsideration (Tr. 29, 31-34, 30, 37-40).  Plaintiff timely requested an administrative hearing.

On December 11, 2002, Administrative Law Judge William G. Horne ("ALJ Horne") held a hearing during which Plaintiff testified and was represented by counsel (Tr. 217-255). Hershel Goren, M.D., a medical expert ("ME"), and Barbara Burk, a vocational expert ("VE") appeared and testified (Tr. 44, 47). On June 17, 2003, ALJ Horne determined that Plaintiff retained the capacity to perform her past relevant work as a receptionist (Tr. 12-18). ALJ Horne's decision became the final decision of the Commissioner when the Appeals Council denied further review (Tr. 5-7). Plaintiff then appealed to this Court for judicial review pursuant to 42 U.S.C. § 405(g).

On December 7, 2004, the parties filed a joint stipulation to remand the matter back to the Commissioner for further administrative proceedings (Tr. 287-89). Magistrate Judge James S. Gallas vacated ALJ Horne's decision and remanded the case for a new hearing and decision (Tr. 286). Upon remand, the ALJ was instructed to proffer to Plaintiff and her attorney the March 18, 2003 report from Thomas F. Zeck, Ph.D. and to "submit this report to those medical and vocational experts who previously testified . . . and to request comments from these experts about the effects the report has on their previous testimony" (Id.).

In the meantime, Plaintiff filed a second application for Disability Insurance benefits on May 6, 2004 (Tr. 303-305). This application also was denied initially and upon reconsideration (Tr. 284, 294-297, 285, 299-301). Plaintiff timely requested an administrative hearing (Tr. 302). On remand, Plaintiff's subsequent application was consolidated with her prior application (Tr. 266, 292-93).

On June 14, 2005 Plaintiff appeared with counsel and testified at a second hearing before ALJ Patricia Lobo (the "ALJ") (Tr. 549-574). On March 30, 2007, after considering Plaintiff's

age, education, past work experiences, and residual functional capacity ("RFC"), the ALJ concluded that Plaintiff has not been under a "disability" as defined by the Act because she retained the capacity to perform a significant number of sedentary jobs existing in the national economy (Tr. 264-274).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Plaintiff claims that the ALJ erred: (1) in formulating Plaintiff's RFC by failing to afford proper weight to the opinion of Plaintiff's treating physician regarding her debilitating fatigue and to give enough weight to Plaintiff's testimony in assessing her credibility; and (2) by relying on the medical-vocational guidelines—instead of the testimony of a VE—in determining that Plaintiff can perform a significant number of jobs in the national economy.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on April 14, 1958, (age 48 at the time of the ALJ's March 30, 2007 determination), Plaintiff is a "younger individual."  *See* 20 C.F.R. §§404.1563, 416.963.  Plaintiff last completed the twelfth grade and has past relevant work experience as a receptionist in a medical office (Tr. 58, 53, 65-72, 272, 326-27, 333-40).

### B.  Medical Evidence

On April 8, 2000, Plaintiff's husband brought Plaintiff to the Amherst Hospital's emergency room.  Plaintiff had been experiencing an episode of confusion lasting several hours (Tr. 358-84).  After undergoing a magnetic resonance imaging ("MRI"), a lumbar puncture, and an electroencephalogram ("EEG"), Plaintiff was diagnosed with MS and complex partial

3

seizures (Tr. 380, 426-428).  Throughout the time period relevant to the Court's review — April 2000 through September 2004 — Plaintiff complained of fatigue, memory loss, confusion, behavior problems, sleep deprivation, joint and muscle pain, and headaches (Tr. 133, 139, 143, 145, 151, 153, 165, 358, 363-67, 403-05, 413).

In April 2000, Dr. Dhruv Patel, Plaintiff's treating neurologist, discussed with Plaintiff the use of immunomodulators for the treatment of MS.  In August of that year, Dr. Patel started Plaintiff on Copaxone to prevent a relapse of MS, indicating with emphasis that "this treatment will be considered lifelong" (Tr. 421).  Dr. Patel further reported that between August 2003 and November 2003 Plaintiff complained of fatigue — a symptom MS patients commonly experience (Tr. 389, 393, 395, 397).  To help alleviate Plaintiff's fatigue, Dr. Patel prescribed Provigil. Due to Plaintiff's adverse reaction to Provigil, Dr. Patel subsequently prescribed over a period of time various other medications to help control Plaintiff's fatigue, including Dilantin, Depakote, Zonegran, and Carbatrol (Tr. 392-94).  Dr. Patel also diagnosed Plaintiff with depression and prescribed Effexor (Tr. 398).

In October 2003, Plaintiff consulted Walid Saber, M.D. at Cleveland Clinic for a second opinion (Tr. 469).  Dr. Saber noted Plaintiff's history of "acute confusional episodes of unclear etiology" but was unable to diagnose her at that time as it was necessary to review previous medical records and MRIs for comparison (Tr. 473-74).  The record contains no indication as to whether or not Plaintiff thereafter returned to Dr. Saber with the relevant medical records.

On March 12, 2003, following the hearing before ALJ Horne, Plaintiff was sent to Thomas Zeck, Ph.D. for a psychological examination (Tr. 209-16).  Dr. Zeck stated that

Plaintiff's "primary problem seems to be fatigue and a lack of energy" (Tr. 214).  He opined as follows:

> Her mental ability to withstand the stress and pressures associated with a day to day work activity is mildly to moderately impaired due to her lack of energy and some depression which has been lifted by Effexor.  There is no major problems in attention and concentration.  Because of her lack of energy her pace and persistence may be minimal

(Id.).

On September 17, 2003 Dr. Patel noted that Plaintiff had presented to the Amherst Hospital emergency room on the previous day with a "spell, suggestive of a seizure" (Tr. 390). In February 2004, Dr. Patel reported that in the previous month Plaintiff had experienced "two seizures, lasting for 3-4 minutes, with left-sided paresis"(tr. 308, 387), and he increased her medication, Zonegran, to control the seizures (Tr. 388).  Plaintiff reported during her next visit with Dr. Patel in June 2004 that she had not experienced any more seizures (Id.).

On June 28, 2004, a non-examining physician for the Social Security Administration reviewed Plaintiff's record and opined that Plaintiff could perform light work activity with the following restrictions: only occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; and only occasional balancing (Tr. 514-15).

On August 16, 2004, Plaintiff returned at the request of the Administration to Dr. Zeck for a second psychological evaluation.   At this time, Dr. Zeck diagnosed Plaintiff with adjustment disorder with depressed mood (Tr. 519-24).  Plaintiff's I.Q. was within the borderline range, and Dr. Zeck gave Plaintiff a global assessment of functioning ("GAF") of 52.  During the evaluation, Plaintiff described to Dr. Zeck a recent car accident in which she had been involved

and which may have occurred while Plaintiff was having a seizure (Tr. 519). Plaintiff's driver's

license was revoked following the crash (Id.).  Dr. Zeck made the following conclusions:

> 1.  This claimant's ability to relate to others appears to be adequate as she related
> well during this evaluation to the evaluators and to the office staff.  She does
> complain of being tired which could create some problems and may create some
> less than positive interactions.  She is able to do many household chores and her
> husband is of assistance to her.
>
> 2.  Her mental ability to understand, remember, and follow instructions is
> moderately impaired by borderline verbal and performance intelligence and
> impaired low average working memory as she fell one and half standard
> deviations below the mean.  It is not sure whether or not she could do simple
> tasks unless they were ingrained in her and she would have time to practice and
> work towards committing them to memory.  It is felt that she is mentally capable
> to understand, remember, and follow simple instructions.
>
> 3.  Her mental ability to maintain attention, concentration, persistence, and pace is
> mildly affected by her lowered memory scores.  She works rather slowly and gets
> upset when she can't perform like she would like.
>
> 4.  Her mental ability to withstand the stress and pressures of a day to day work
> activity is moderately impaired by her depression and her fatigue

(Tr. 523).

A non-examining physician for the Social Security Administration completed a mental

functional capacity assessment on August 27, 2004, and identified moderate limitations in the

following areas:

> The ability to understand and remember detailed instructions; the ability to carry
> out detailed instructions; the ability to maintain attention and concentration for
> extended periods; the ability to perform activities within a schedule, maintain
> regular attendance, and be punctual within customary tolerances; the ability to
> complete a normal work-day and workweek without an unreasonable number and
> length of rest periods; the ability to respond appropriately to changes in the work
> setting

(Tr. 525-26).  The physician also concluded that Plaintiff's complaints were consistent with the

medical examiner's evaluation and appeared to be credible (Tr. 527).

On October 20, 2004, Dr. Patel reported that Plaintiff's MS remained quiescent and that she had had no further seizures (Tr. 541-42).  Plaintiff still complained of fatigue, which occurred mostly in the mornings, and some chronic headaches (Id.).  Plaintiff's medications at that time included: Carbatrol and Zonegran for seizures; Copaxone for MS, and Talwin and Esgic Plus for her headaches (Id.).

### C. Hearing Testimony

At the second hearing on June 14, 2005, Plaintiff testified regarding her chronic headaches, fatigue, and short-term memory loss.  She stated that she normally gets a headache in the morning, shortly after taking her medications (Tr. 554).  She then takes medication for the headache, which increases her fatigue (Tr. 555, 568-69).  Plaintiff further testified that her anti-seizure medication also causes fatigue (Tr. 557-58).  She had recently been involved in a car accident which her doctor believed may have been caused by a seizure, so her medication was increased (Id.).  Plaintiff expressed her belief that all the medications she takes cause her headaches and fatigue (Id.).  Plaintiff also testified that she takes a daily shot of Copaxone, which has kept her MS in remission (Tr. 560).

Plaintiff also testified regarding her short-term memory loss.  She stated that she must write everything down — from shopping lists to whether or not the bills have been paid to whether or not she has taken her medications — if she wants to remember them (Tr. 561, 565-66).  When asked about her fatigue, Plaintiff stated that she is always tired (Tr. 568).

Plaintiff also testified that she does household chores and grocery shops with her husband's help (Tr. 563, 566).  Plaintiff tries to do yard work, but the summer heat gives her nausea, which is a symptom of MS (Id.).

Although Plaintiff testified during the first hearing that she was working part-time at a local college checking student identification cards and serving food, Plaintiff stated at the second hearing that she was no longer working (Tr. 13, 15, 553).

## III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. § 423.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. § 404.1505.

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed the Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court

would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V.  ANALYSIS

### A.  Whether the ALJ's RFC Assessment is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in formulating her RFC. The basis is of Plaintiff's argument is two-fold; she claims: (1) that the ALJ erred in affording little weight to the opinion of her treating physician; and (2) that the ALJ erred in assessing Plaintiff's credibility. The Court addresses each issue separately below.

#### 1.  The ALJ's Treatment of Plaintiff's Treating Doctors

Plaintiff argues that Dr. Patel, her treating specialist, made repeated references to her debilitating fatigue and that the ALJ erred by failing to give his opinion significant or controlling weight in determining Plaintiff's RFC. Plaintiff claims that Dr. Patel's opinion deserves such weight because it is consistent the ME's statement that MS can cause fatigue and the opinion of the examining psychologist, Dr. Zeck, that Plaintiff's pace and persistence may be minimal due to her lack of energy. The Commissioner argues in response that the ALJ properly weighed the medical source opinions and considered Plaintiff's fatigue in determinating her RFC.

The Social Security Regulations require the ALJ to evaluate every medical opinion of record regardless of its source.  *See* 20 C.F.R. § 416.927(d).  The required evaluation first focuses on treating physicians, whose opinions are entitled to controlling weight under the treating physician rule as long as the opinions are: (1) well supported by medically acceptable data; and (2) not inconsistent with other substantial evidence of record.  *Id.* at § 416.927(d)(2); *see* *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This is known as the treating physician rule.  If the above requirements are not met, the treating physician rule does not apply, but the ALJ must continue to evaluate that treating source's opinion by considering the following additional factors: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source.  20 C.F.R. § 404.1527(d).  The ALJ also must evaluate the opinions of non-treating medical sources — such as one-time examiners or medical experts who testify during the administrative hearing — by considering the same factors listed above.

In order to comply with the Regulations, "a decision denying benefits must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson*, 378 F.3d at 544 (citing SSR 96-2p, 1996 WL 374188 at *5 (1996)).  Yet, while it might be ideal for an ALJ to articulate her reasons for crediting or discrediting each medical opinion, it is well settled that "an ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a

party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Although Plaintiff complains that the ALJ erred by failing to afford controlling or significant weight to Dr. Patel's opinion regarding her debilitating fatigue, it is not entirely clear to the Court that Dr. Patel in fact expressed an opinion about Plaintiff's symptoms.  Plaintiff claims that her "treating neurologist has made repeated reference to her debilitating symptoms," that Dr. Patel "reported that [Plaintiff]'s main complaint was fatigue with difficulty performing activities of daily living on many days," and that Dr. Patel acknowledged that MS patients commonly experience fatigue.  Presumably, Plaintiff presents these statements as the "opinions" that the ALJ erroneously discarded.  However, it appears from these reports that Dr. Patel is merely recounting Plaintiff's complaints regarding her symptoms.  Nowhere in these reports does Dr. Patel seem to opine about the severity of Plaintiff's fatigue or the functional limitations resulting from Plaintiff's reported symptoms.  Without more commentary on these points, it is hard for the Court to see how Dr. Patel's report constitute "opinions" at all, let alone opinions entitled to controlling weight.   As the ALJ notes, "no treating source refers to [Plaintiff] as having incapacitating or debilitating symptoms that would prevent her from performing sedentary work, including her treating specialist, Dr. Patel" (Tr. 272).  The Court finds that substantial evidence supports the ALJ's conclusion.

However, to the extent that Dr. Patel's notes do constitute an opinion regarding Plaintiff's functional limitations — a proposition the Court seriously questions — the ALJ gave good reasons for according that opinion less than presumptive weight as required under Social Security law.  As the ALJ noted, the medical evidence — including Dr. Patel's reports —

establish that Plaintiff has MS but that her medication has kept it quite mild or "quiescent" since June 2004 (Tr. 268).  The ALJ also explained that the record, including Dr. Patel's reports and Plaintiff's own statements, establishes that Plaintiff's medications have kept her seizures under control since January 2004 (Tr. 269-71).   The ALJ further cited to Dr. Patel's reports to demonstrate that Plaintiff's medications controlled her mild depression and headaches (Tr. 271).  She also determined that record did not establish that Plaintiff's medications cause side effects that would interfere with her ability to do sedentary work (Tr. 272).  The ALJ also took into consideration the consultative evaluations of the examining psychologist, Dr. Zeck, who opined that Plaintiff "had an adequate ability to relate to others and to understand, remember and follow through on instructions as well as maintain attention, concentration and persistence" and "had a mild to moderate limitation in her ability to withstand stress and pressure" (Tr. 271).  Finally as noted above, the ALJ explained that there was nothing in the record — including in Dr. Patel's records — to indicate that Plaintiff has "incapacitating or debilitating symptoms" that would prevent her from performing sedentary work (Tr. 272).  Thus, the Court finds that the ALJ did not err with respect to her treatment of Plaintiff's treating physicians.

## 2. The ALJ's Credibility Determination

Plaintiff also argues that the ALJ erred by failing to afford more weight to her hearing testimony, as her testimony is entirely consistent with the medical evidence.  The Commissioner argues in response that the ALJ thoroughly reviewed the factors that must be evaluated in determining subjective allegations of disabling symptoms and properly concluded that there was substantial evidence supporting the ALJ's credibility finding.

"[T]he determination of credibility related to subjective complaints of pain rests with the ALJ, and the ALJ's opportunity to observe the demeanor of the claimant . . . is invaluable and should not be discarded lightly." *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987) (citations omitted). Where there are discrepancies between a plaintiff's testimony and what the written record shows, a reviewing court should not substitute its findings for those of the ALJ. *Gooch v. Sec. of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987). Moreover, "discounting [a claimant's] credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

To find disabling pain in most disability benefits cases, there must be objective evidence of an underlying medical condition and either objective medical evidence *confirming* the severity of the alleged pain arising from that medical condition, or the objectively determined medical condition must be of a severity which can *reasonably be expected* to give rise to the alleged pain. *See Buxton v. Halter* 246 F.3d 762, 773 (6th Cir. 2001); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986).

However, the *Duncan* test is not the end of the analysis. The ALJ must consider other factors that may or may not corroborate Plaintiff's claims and point to evidence besides his own personal observations when rejecting a plaintiff's allegations of severe and disabling pain. *See Martin v. Sec. of Health and Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984); *Walters*, 127 F. 3d at 531; *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1986); and 20 C.F.R. § 416.929(c)(2). These factors may include: statements from the claimant and the claimant's treating and

13

examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 416.929(a), (c)(3).

The ALJ in this case provided a relatively thorough credibility assessment and review of Plaintiff's allegations, as required under *Duncan* and the Social Security Regulations.  After reviewing the record as a whole, the ALJ determined that Plaintiff's impairments reasonably could be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible (Tr. 271).  In making her determination, the ALJ considered the appropriate factors set forth in 20 C.F.R. § 929(c)(3).  Specifically, the ALJ considered Plaintiff's testimony regarding her fatigue; her daily activities, including her attempts to return to work and ability to perform some household chores; and the effectiveness of her medications in keeping her MS, seizures, headaches, and mild depression under control, among others.  In the end, the ALJ gave Plaintiff "the benefit of the doubt" regarding the severity of her symptoms and determined that Plaintiff "would at most be restricted to sedentary work" (Tr. 272).  Therefore, it is clear from the ALJ's decision that she properly weighed Plaintiff's credibility, that despite Plaintiff's claims the ALJ did give some weight to Plaintiff's testimony, and that the ALJ's determination is supported by substantial evidence.

## **B.  Whether the ALJ Erred by Relying on the Grid Instead of VE Testimony**

Plaintiff argues that the ALJ's decision that she can perform other jobs in the national economy is not supported by substantial evidence and that the ALJ erred by relying on the Medical-Vocational Guidelines instead of calling a vocational expert to testify at Plaintiff's second hearing.  Plaintiff further contends that the Commissioner did not meet his burden of proof to demonstrate the existence of employment compatible with Plaintiff's disability.

The Commissioner first argues that VE testimony was not necessary because the ALJ determined that Plaintiff was unable to perform her past relevant work as a receptionist.[1]  The Commissioner next argues that the ALJ properly relied upon the Medical-Vocational Guidelines — also known as "the Grid," *see* 20 C.F.R. Part 404, Subpart P, Appendix 2 —  even though the ALJ's RFC determination contained nonexertional limitations (Doc. 12, at 14).  The Commissioner agrees that "if a claimant's RFC does not coincide with the definition of one of the ranges of work because she has nonexertional limitations that may erode the occupational base, the Agency uses the Grids only as a framework and relies on other vocational evidence to

---

[1]Plaintiff appears to suggest that the ALJ violated Magistrate Judge Gallas' remand order by failing to obtain from the VE that appeared at Plaintiff's first hearing comments regarding the effect of Dr. Zeck's reports upon Plaintiff's ability to work.  At the first hearing, the VE determined that Plaintiff was capable of performing light, semi-skilled work, and that therefore, Plaintiff could return to her past relevant work as a receptionist — work the VE classified as sedentary and semi-skilled (Tr. 17-18).  At the second hearing, however, the ALJ determined (in part due to the limitations contained within Dr. Zeck's report) that Plaintiff was limited to unskilled, sedentary work (Tr. 270-71).  The ALJ then determined that Plaintiff was unable to perform her past work as a receptionist and proceeded to analyze whether Plaintiff could perform other jobs existing in significant numbers in the national economy.  Because the ALJ determined that Plaintiff could not return to her past relevant work, it was reasonable for the ALJ not to proffer Dr. Zeck's reports to the VE.

determine whether the claimant can still do a significant number of jobs with those nonexertional

limitations" (Id.).  However, the Commissioner contends that this is not such a case.

The Grid is employed in the final stage of the disability determination, "after it has been

determined that the claimant has not met the requirements of a listed impairment but is

nevertheless incapable of performing past relevant work." *Abbot v. Sullivan*, 905 F.2d 918, 926

(6th Cir. 1990).  At this stage, the Commissioner bears the burden of demonstrating that the

claimant retains the RFC to perform specific jobs existing in the national economy.  *Id.* (internal

citations omitted).  The Commissioner "may rely on the Grid to demonstrate the availability of

appropriate jobs if a claimant's limitations are exertional, or if a claimant has nonexertional

limitations[2] that do not significantly limit her ability to perform a full range of work at a specific

exertional level." *Pena v. Comm'r of Soc. Sec.*, No 98-1833, 1999 WL 775832, at *4 (6th Cir.

Sept. 24, 1999).  The Sixth Circuit has recognized that "before reaching the conclusion that the

grid will not be applied because [of the alleged] nonexertional limitations, those limitations must

---

[2]    Nonexertional capacity considers any work related limitations and restrictions
that are not exertional.  Therefore a nonexertional limitation is an impairment-
caused limitation affecting such capacities as mental abilities, vision, hearing,
speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching,
handling, fingering, and feeling.  Environmental restrictions are also considered
to be non-exertional.

* * * *

An "environmental restriction" is an impairment-caused need to avoid an
environmental condition in a workplace. * * * * *In general, few occupations in
the unskilled sedentary occupational base require work in environments with
extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards*.

SSR 96-9p: *Determining Capability to Do Other Work — Implications of a Residual Functional
Capacity for Less Than a Full Range of Sedentary Work*, July 2, 1996 (emphasis added).

be severe enough to restrict a full range of gainful employment at the designated level." *Mullins v. Sec. of Health and Hum. Servs.*, 836 F.2d 980, 985 (6th Cir. 1987) (alteration in original) (emphasis removed).  In other words, the issue is whether there is "sufficient evidence to support the ALJ's finding that there was no *significant* nonexertional impairment, *i.e.*, one that would prevent [a claimant] from performing a full range" of work at all exertional levels.  *Kimbrough v. Sec. of Health and Hum. Servs.*, 801 F.2d 794, 797 (6th Cir. 1986) (emphasis in original).  Mere assertions of nonexertional limitations as well as minor nonexertional limitations are not enough to preclude application of the Grid.  *Cole v. Sec. of Health and Hum. Servs.*, 820 F.2d 768, 772 (6th Cir. 1987); *Clinker v. Apfel*, No. 99-4179, 2000 WL 1234325 at *2 (6th Cir. Aug. 22, 2000); *see also Collins v. Astrue*, No. 3:07-cv-444, 2008 WL 4614326 at *4 (E.D. Tenn. Oct. 15, 2008).

At the final step of the her analysis, the ALJ stated:

> [Plaintiff]'s restrictions on climbing, exposure to hazards and exposure to excessive heat in the workplace would not [be] expected to have a significant impact on the occupational base of sedentary work (see SSR 85-15).  Her mental limitations would allow her to perform work which is unskilled (i.e., simple and routine).  Therefore, [Plaintiff] is capable of performing a significant number of occupations in the national economy.  For example, the Commissioner has identified some 200 unskilled (simple, routine) sedentary occupational categories which exist in significant numbers in the national economy.  Section 202.00(a), Appendix 2

(Tr. 273).

The ALJ in this case considered Plaintiff's nonexertional limitations — including her mental limitations and the requirements that she avoid exposure to hazards and excessive heat in the workplace — and determined that these restrictions would not erode the occupational base of

17

unskilled sedentary work. The ALJ determined that a VE was therefore unnecessary and that it was proper to apply the Grid. In light of the facts that "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards" — *see* SSR 96-9p — and that there are some 200 unskilled sedentary occupational categories which exist in significant numbers in the national economy — *see* 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, Section 201.00(a) — the ALJ's use of the Grid was fully in compliance with the Act.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 7, 2009.